152 So.2d 637 (1963)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Bruce E. BROOKS, Defendant-Appellant.
No. 9897.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
Rehearing Denied April 25, 1963.
Certiorari Refused June 14, 1963.
*638 Shotwell & Brown, Monroe, for appellant.
D. Ross Banister, Glenn S. Darsey, Norman L. Sisson, Chester E. Martin, Jesse S. Moore, Jr., Baton Rouge, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is an expropriation proceeding. Under date of August 16, 1960, plaintiff deposited in the registry of the court the sum of $2,700.00 and obtained an order of expropriation granting unto plaintiff a right of way across defendant's property for a highway designated as Interstate 20. A subsequent appraisal by plaintiff's experts would show $7,850.00 as the value of the property taken. A tender of the difference in the appraisals was refused by defendant. After trial the court fixed the compensation to which defendant is entitled in the latter amount. Contending that the award was insufficient, defendant appealed.
Concerned on this appeal are issues relating to the value of the property taken and to the severance damage to the remaining property.
In a specification of errors, defendant contends that the trial court erred: (1) in concluding that the front-foot value of the property taken was only $20.00, whereas such value should have been $30.00 per front foot; (2) in allowing deductions from the front-foot value of the property other than the cost of extending improvements to the property; (3) in allowing a deduction for developer's profits and salesman's commission; (4) in placing a value on the portion of the tract severed from the remainder; and (5) in failing to recognize the depreciation in value of two lots adjacent to the right of way of the interstate highway.
Plaintiff contends, however, that, on the date of the expropriation, the property of defendant was a proposed and not a developed, active subdivision, and, hence, that *639 the value should be determined upon an acreage basis.
The testimony discloses, and the trial court concluded, that the property taken was that of an active subdivision. The evaluation was made on that basis. However, we find no basis for disagreement with the trial court on its finding that defendant's property comprised an active subdivision at the time of the institution of this action.
The property taken consisted of a tract 300 feet wide by 409.75 feet in length, comprising a portion of a 20-acre tract approximately 2121.27 feet in length, north and south, by 409.75 feet in width, east and west. The property adjoins, and extends southward from, U. S. Highway 80. Severed from the remainder of the property is a strip 194.84 feet in width, containing 1.7 acres and extending across the south end of the tract.
Defendant acquired this property in 1941, originally and primarily for residential purposes. In the early 1950's, he visualized that the property would make a desirable subdivision due to the development of the City of West Monroe in that direction and to its location and characteristics. In the late 1950's, plans were made and work begun for the development of the property as a subdivision. The property was cleared of underbrush and surveyed, and the streets and lots were laid out and staked. The construction of a street extending through the center of the property, from north to south, was begun. Plans of development were approved by the Federal Housing Administration and by the State Board of Health. All of these were accomplished facts before any information was received that the highway project would cross defendant's property. The plat of the subdivision, however, was not filed for public record until the day following the institution of this proceeding.
Expenses incurred in developing the subdivision exceeded $15,000.00, a considerable portion of which was expended prior to any knowledge of the location of the proposed highway. These expenses included items such as surveying and staking of lots, clearing right of way for streets and grading, culverts for streets, tractor work, paving, and a water system. Forty-eight lots were included in the original survey and plat. Because of the taking of the right of way, the number of lots was reduced to 36.
The character of the terrain of the subdivision is best described by its name, "Forest Hills." This property, by reason of its location and proximity to the City of West Monroe, as well as its proximity to existing subdivisions and its topography, was particularly suitable for development as a subdivision. On the east, this property had a common boundary with the Parkdale Subdivision, with which its principal street was interconnected. Indeed, as hereinabove noted, the development of the subdivision had proceeded to a state of actual reality.
The rule is well established in the jurisprudence of this State that, in suits of this character, the most profitable use to which the property can be put, by reason of its location, topography, and adaptability, will be considered as bearing upon its market value. Louisville & N. R. Co. v. R. E. E. De Montluzin Co., 166 La. 211, 116 So. 854; Housing Authority of New Orleans v. Persson, 203 La. 255, 13 So.2d 853; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36; City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445; Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251; Parish of Lafayette Through Police Jury of Lafayette Parish v. Hernandez, 232 La. 1, 93 So.2d 672; Arkansas Louisiana Gas Co. v. Morehouse Realty Corp., La.App. 2d Cir., 1961, 126 So.2d 830.
The evidence fully establishes, and there is no contention to the contrary, that the best and highest use to which defendant's property could have been and was in the process of being put was for residential subdivision purposes. In an expropriation proceeding in the early 1940's (Texas Pipe Line Co. v. National Gasoline Co., 203 La. *640 787, 14 So.2d 636), property acquired in 1928 for residential subdivision purposes was, from its close proximity to Bossier City, and from the fact that it lay on both sides of Highway 80 and was bisected by the Shed Road, held properly evaluated as subdivision property, although the property was then used as a hay meadow. See, also: State v. Boyer, La.App. 3d Cir., 1961, 130 So.2d 738, and the authorities therein cited.
Plaintiff's objection to the classification of defendant's property as subdivision property is predicated upon the fact that a plat of a survey of the property had not been recorded and filed prior to its expropriation. This, the plaintiff contended, was a prerequisite to converting acreage to a subdivision. However, it was pointed out in the Boyer case that the statute relied upon (LSA-R.S. 33:5051) afforded no basis for a prohibition against the appraisal of property as a subdivision before the actual recordation of a plat. The prohibition extended only to the selling of property in a subdivision without the prior recordation of the plat. The contention made is, therefore, without merit.
Reference may now be made to the testimony of the expert appraisers relative to their evaluation of the property taken and as to the severance damage to the remainder.
Glenn Ira Tidwell, engaged in the real estate and construction business, testified that he had purchased lots in the subdivision at the rate of $22.50 per front foot and was in the process of erecting homes thereon. As a comparison, he stated that lots in the adjacent Parkdale Subdivision had sold for $20.00 per front foot, but that the lots in Forest Hills Subdivision were, due to the difference in terrain, the existence of trees, and the manner in which the streets and drainage had been laid out, far superior to those in the adjoining subdivision. Moreover, in his opinion, the portion of defendant's property taken by the highway was by far the most valuable part of the subdivision. He placed a value of $25.00 per front foot on the area taken by the highway as well as on that portion remaining to the south of the highway. This witness further testified that, due to the noise and inconvenience occasioned by their close proximity to a high-speed highway, Lots 17 and 18 of the subdivision were diminished in value by approximately 20%.
C. E. Buckley, who had engaged in the real estate business in Ouachita Parish for 18 years, testified that the property remaining in defendant's subdivision was worth $25.00 per front foot; that the portions taken and severed from the remainder had a value of $30.00 per front foot. The property severed and lying south of the highway had, in his opinion, no economic value due to its inaccessibility.
W. Dean Carter, a witness for plaintiff, testified that lots in the adjoining Parkdale Subdivision had been selling for $20.00 per front foot and, upon a basis of their similarity, the lots in the subdivision presently concerned should sell for the same price. This was the same estimation as made by Chester A. Driggers, likewise a witness for plaintiff. Driggers stated that lots in this subdivision had, since the taking, been sold at a price of $22.50 per front foot on a credit basis. James D. Halsell, plaintiff's employee, testified that 13 of the 36 lots of the subdivision had been sold at a price of $22.50 per front foot. No difference was made in the price between cash and credit sales.
Giving consideration to the testimony of all the experts and to the evidence bearing upon the value of the property taken at the time of the expropriation, we conclude that, by a preponderance of the evidence, the property taken had a market value of, at least, $22.50 per front foot. We further conclude that the portions severed from the remainder and lying south of the highway right of way, at the time of trial, also had an equal value.
On the question of severance damages to Lots 17 and 18, we are not convinced that *641 the damages have been established by a preponderance of the evidence and to that degree of certainty as required by law.
However, as to that portion lying south of the highway, severance damages have been amply established. The only question meriting consideration in that respect is the present value of that portion of the property which is rendered inaccessible under present conditions. The highway right of way is fenced. There is no road or outlet available to this property within a distance of approximately one-half mile. Some of the witnesses, as pointed out, were of the opinion this property had no economic value. One of the witnesses for the State fixed a value of $500.00 based on an evaluation of $300.00 per acre. Obviously, the property has some value. It is defendant's property. Allowance, we think, should be made for the value remaining in the property as estimated by plaintiff's witness. Allowance should also be made for the extension of the street and other improvements to the property taken, as well as to the portion severed, estimated in the sum of $2,998.77.
Pursuing the calculation at the rate of $22.50 per front foot, the 600 front footage of the property taken had a value of $13,500.00. The property severed by the right of way, with a front footage of 389.68, had a value of $8,767.80, from which sum should be deducted its present value estimated at $500.00, leaving a balance of $8,267.80. The value of the property taken and the severance damage to the remainder total $21,767.80. From this total, there should be deducted $2,998.77 as the cost of extending the improvements to the property. Thus, there remains $18,769.03 as the just compensation due defendant for the value of the property taken and as severance damages to the remainder.
Plaintiff contends, however, that from the aforesaid there should be deducted developer's profit estimated at 30% and salesman's commission of 5%. There is no basis for this contention. Defendant is the developer of his own property and makes his own sales. The development of the property had proceeded, prior to the expropriation, to that of an active subdivision. The nature of the property had been changed from an acreage basis to that of a subdivision. The value, therefore, is properly determined on a front-footage basis upon which an award of just compensation must be made.
Rules for the allowance of expected profits to a developer who has acquired raw acreage for subdivision purposes, and where the expropriation took place before development, have no application to the situation here. The proper criterion as to value is what the defendant would be willing to take and a buyer willing to pay, in the ordinary and usual course of business, for each lot included in the area expropriated. While it is true, the final plat of the subdivision excluded the area taken by the highway, as well as that portion remaining to the south thereof, the original plat prepared before defendant had knowledge of the highway plans did include such areas as a part of the subdivision, and lots were actually staked within those areas.
For the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is therefore Ordered, Adjudged, and Decreed that the market value of the property expropriated be, and the same is hereby, affixed at the sum of $13,500.00; and that the award of damages to the remainder of defendant's property be, and the same is hereby, fixed at $8,267.80, from the total of which is deducted the $2,998.77, leaving a total of $18,769.03.
It is further Ordered, Adjudged, and Decreed there be judgment herein in favor of the defendant, Bruce E. Brooks, and against the plaintiff, State of Louisiana, through the Department of Highways, for the full sum of $18,769.03 less $2,700.00 heretofore deposited *642 in the registry of the court, or for a net of $16,069.03, with 5% per annum interest thereon from August 16, 1960, until paid.
It is further Ordered, Adjudged, and Decreed that the fees of the following-named expert witnesses be fixed and taxed as cost in the amounts hereinbelow shown:

Robert F. Meredith ....... $200.00
Glenn Ira Tidwell ........ 100.00
C. E. Buckley ............ 200.00

It is further Ordered, Adjudged, and Decreed that the plaintiff, State of Louisiana, through the Department of Highways, pay all such cost of these proceedings, including the cost of this appeal, as is assessable against it; and that, in the completion of said expropriation, the plaintiff deposit, in the registry of the court, to defendant's credit, the aforesaid sum of $16,069.03, together with interest and cost.
Amended and affirmed.