175 So.2d 681 (1965)
CITY OF MONROE, Plaintiff-Appellee,
v.
Georgia NASTASI et al., Defendants-Appellants.
No. 10367.
Court of Appeal of Louisiana, Second Circuit.
April 28, 1965.
Rehearing Denied May 21, 1965.
Writ Refused July 2, 1965.
*682 Thomas H. Fowler, Jr., West Monroe, Warren Hunt, Rayville, for defendants-appellants.
Haynes L. Harkey, Jr., W. F. Pipes, Monroe, for plaintiff-appellee.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
Plaintiff brought suit to expropriate certain property owned by defendants. After trial there was judgment adjudicating the ownership of the property to plaintiff municipality upon payment of the sum of $35,518.00, which was fixed as the true value of the property taken. From this judgment the defendants have appealed.
The only issue presented by the appeal relates to the value of the property.
The purpose of the expropriation was the governmental use of the property as a part of the proposed Civic and Cultural Center for the City of Monroe.
The property involved is described as comprising three parcels of land. The first tract contains 15,717.52 square feet fronting 115.21 feet on Wood Street and extending 136.42 feet along Seventh Street to an alley, on which property are situated a brick store building and two frame houses. The second parcel contains 5,000 square feet fronting 50 feet on Seventh Street by a depth of 100 feet along an alley. The third lot contains 4,321 square feet fronting 50 feet on Oak Street by a depth of 86.42 feet on Seventh Street, on which is located a frame house.
All of the property is located in an "R-2" or multiple family residence district under the zoning ordinance, subject, however, to the exception of the commercial use of the brick building.
The testimony as to valuation of the properties was given in considerable detail by two experts on behalf of plaintiff municipality and two experts on behalf of defendants. Plaintiff's witnesses valued the property at $33,800.00 and $35,400.00, while defendants' witnesses fixed a value of $86,600.00 and $87,700.00. The wide variance in valuation is accounted for by the differing opinions of the witnesses as to the highest and best use of the property involved. Plaintiff's experts considered that the property, being located in a declining *683 residential area, was best suited for multiple residence use, while defendants' experts predicated their valuations upon the contention that the property was subject to a demand for commercial use.
So-called comparable sales were used by the expert witnesses. After thorough examination of the record we have come to the conclusion that the only true comparable was the private sale of three parcels of property, located some three blocks distant from the subject property, made by the owners to the Gulf Oil Corporation for a total consideration of $76,000.00. This sale involved property under the R-2 zoning classification in close proximity to a ramp leading from the new Interstate Highway 20 now under construction fronting 136 feet on Hart Street by a depth of 160 feet. One of the principal factors which prevents the consideration of this sale as being an almost exact comparable is that the sale was made contingent upon a change in the zoning classification to commercial use, and it was only upon compliance with this condition that the sale was consummated.
Defendants insist that the property involved in this suit is admirably located with an extensive frontage on Seventh Street near two ramps leading onto and off of the 1-20 Highway. This argument is countered on behalf of plaintiff with the contention that under present zoning restrictions the property is not susceptible to commercial use and that the supposed demand for such purpose is highly speculative and, therefore, not subject to consideration as an element of value.
There is one familiar principle of law which must be given effect with reference to valuation of the property under examination. It is well-established that the highest and best use to which the property is adapted must be taken into account; City of Shreveport v. Abe Meyer Corporation, 219 La. 128, 52 So.2d 445; Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251; Arkansas-Louisiana Gas Co. v. Morehouse Realty Co. (La.App.2nd Cir., 1961), 126 So.2d 830; State, through Department of Highways v. Pace (La.App.2nd Cir., 1961), 131 So.2d 118; State, through Department of Highways v. Hedwig, Inc., (La.App. 4th Cir., 1961, writs denied), 133 So.2d 180.
We think the record supports defendants' position that the property is adapted to commercial use and will be subject to an increasing demand because of its location with relation to the new Interstate Highway, and particularly to the ramps accommodating the movement of traffic to and from said highway.
However, before a basis of valuation for commercial use is accepted, serious consideration must be given to the effect of the presently existing zoning regulations which restrict the property to multiple residence use. While we find no Louisiana authority on this specific point, we are impressed by the opinion in United States v. Meadow Brook Club (U.S.C.A. 2nd Cir., 1958, writs denied), 259 F.2d 41, which contains the pronouncement:
"* * * if there is a reasonable possibility that the zoning classification will be changed, this possibility should be considered in arriving at the proper value." (Emphasis supplied.)
On this point the record establishes the fact that it will be necessary to change the zoning classification in order to permit the use of the property for the purposes for which it is intended by the plaintiff municipality. Consideration must also be given to the fact that such a change in classification was effected with respect to the comparable property above described, and, further, the record contains no evidence which would indicate that there exists any bar to the necessary change of classification. We are at a loss to imagine what further evidence could possibly have been produced on behalf of defendants in support of their contention that "a reasonable possibility" of a change in the zoning *684 classification is entitled to consideration. For these reasons, we think a restriction of valuation upon the basis of the present zoning regulation must yield to the higher value attributable to commercial use.
All of the expert witnesses appear to have given weight to a square foot basis of valuation. The witnesses for defendant, applying the same square foot valuation to the subject property as was reflected by the sale to the Gulf Oil Corporation, were of the opinion that the total square footage represented a valuation in excess of $86,000.00. The witnesses for plaintiff, on the basis of a square foot valuation with relation to multiple residence use, reached a conclusion of value of approximately $35,000.00.
Since we have adopted the validity of the commercial use basis, it is necessary that we determine the aggregate value of the three parcels involved. We cannot accept the blanket square foot value application as represented by the Gulf Oil Corporation sale, in view of the fact that there are some physical differences between the properties which have the effect of deteriorating the comparable value of the subject property. The three tracts concerned in the sale to the Gulf Oil Corporation constituted a rectangular unit with a frontage of 136 feet on Hart Street by a depth of 160 feet on Calypso Street. Such a result could not be effected with respect to the land units here concerned. The larger tract represents a frontage of 136 feet on Seventh Street by a depth of 115 feet on Wood Street, but cannot be utilized with the other two smaller tracts because the latter are separated from the first parcel by an alley. Additionally, the value is lessened because of the shallow depth of the two smaller parcels which are respectively 50 × 100 feet and 86 × 50 feet. We have serious question as to whether the value of the largest tract would be enhanced to any material degree by the addition of the smaller lots.
In attempting to resolve the question of value, we have reached the conclusion that only the first tract, consisting of 15,717 square feet, can be given a value substantially equal to the property involved in the Gulf Oil Corporation sale. The two smaller tracts, by reason of their much less desirable location, size and shape, are entitled to only a nominal valuation.
After careful study of the problem we have concluded that the value of the first or larger tract should be fixed at $47,150.00, which approximates the square foot valuation used by defendants' experts, and the value of two remaining parcels should be fixed in the sum of $8,300.00, in accordance with the estimate of plaintiff's witnesses. The aggregate value of the three tracts amounts to the total sum of $55,450.00. By coincidence, this figure is within a reasonable margin of the result which might have been achieved by averaging the respective valuations of the witnesses for plaintiff and defendant. It is pertinent to observe that this basis of striking an average could properly be justified upon the authority of Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541. However, our conclusions have been reached after thorough consideration of the detailed testimony of the several expert witnesses, with whose credibility, sincerity, logic, good reason and qualifications we are equally impressed, as well as the actual physical details of the property.
For the reasons assigned the judgment appealed from is amended and partially recast to read as follows:
It is ordered, adjudged and decreed that the true value of the property, together with all improvements located thereon owned by the defendants Georgia Nastasi, Phyllis Joe Nastasi Black, Mary Nastasi Boyle and Joseph Nastasi, is fixed at the sum of fifty-five thousand four hundred fifty and No/100 ($55,450.00) Dollars.
*685 It is further ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, the City of Monroe, and against the defendants Georgia Nastasi, Phyllis Joe Nastasi Black, Mary Nastasi Boyle and Joseph Nastasi, adjudicating unto the City of Monroe, the following described property, together with all improvements located thereon, owned by the defendants, and situated in the City of Monroe, Parish of Ouachita, State of Louisiana, to-wit:
The following described lots situated in Block Ten of Hart's Addition to the City of Monroe, Ouachita Parish, Louisiana:
(1) All of Lot Four and a portion of Lot Three of said Block Ten of Hart's Addition to the City of Monroe, Louisiana, described as: commencing at the intersection of the west line of Seventh Street with the South line of Wood Street, run in a westerly direction along the south line of Wood Street a distance of 115.21 feet; thence run in a southerly direction parallel to the west line of Seventh Street a distance of 136.43 feet, more or less, to the north line of an alley running in an eastwest direction through said Block Ten of Hart's Addition; thence run in an easterly direction along the north line of said alley a distance of 115.21 feet, more or less, to the west line of Seventh Street; thence run in a northerly direction along the west line of Seventh Street a distance of 136.42 feet, more or less, to the Point of Beginning;
(2) A portion of Lots Five and Six of said Block Ten of Hart's Addition to the City of Monroe, Louisiana, described as: commencing at the intersection of the west line of Seventh Street with the north line of Oak Street, run in a northerly direction along the west line of Seventh Street a distance of 136.42 feet, more or less, to the south line of an alley running in an east-west direction through said Block Ten of Hart's Addition; thence run in a westerly direction along the south line of said alley a distance of 100 feet; thence run in a southerly direction parallel to the west line of Seventh Street a distance of 50 feet; thence run in an easterly direction parallel to the north line of Oak Street a distance of 50 feet; thence run in a southerly direction parallel to the west line of Seventh Street a distance of 86.42 feet, more or less, to the north line of Oak Street; thence run in an easterly direction along the north line of Oak Street a distance of 50 feet, more or less, to the Point of Beginning,
free and clear of all encumbrances, upon payment into the Registry of the Fourth Judicial District Court in and for the Parish of Ouachita, State of Louisiana, of the sum of fifty-five thousand four hundred fifty and no/100 ($55,450.00) dollars, with interest thereon at the legal rate from date of September 17, 1964, until said deposit is made.
Otherwise, the judgment of the district court is affirmed.

On Applications for Rehearing
PER CURIAM:
Applications for rehearing have been filed by both parties to this case. The application on behalf of the defendants calls attention to an inadvertent error of the court in failing to make an assessment of costs. This point is so well settled by statute and jurisprudence that we proceed to a correction of the error without necessity for incurring additional delay by granting a formal rehearing.
In expropriation proceedings, under the provisions of LRS. 19:12, all costs expended by defendants are assessable *686 against the condemning authority unless tender of the true value of the property has been made before proceeding to a forced expropriation. The latest case on this point is Orleans Parish School Board v. Brown (1964), 245 La. 792, 161 So.2d 274.
Accordingly, our judgment on original hearing is amended to the extent of providing that all taxable costs incurred in these proceedings in all courts be and they are assessed against plaintiff-appellee.
Otherwise, the judgment is reinstated and both applications for rehearing are denied.