TUCKER, Judge:
This is an expropriation proceeding in which the Recreation and Park Commission for the Parish of East Baton Rouge seeks to expropriate a 5.53 acre tract of land owned by the defendants, Vincent Drago, et al., situated between Ford and Cadillac Streets in the City of Baton Rouge, Louisiana, for the purpose of a neighborhood park.
Although the taking itself was contested in the lower court, the sole issue on appeal is the value of the land. The lower court judge found the value of the land to be $6,752.00 per acre, and set the fair market value of the whole tract at $37,350.00. From this judgment the Recreation and Park Commission appeals, urging that the lower court erred in not finding the value of the land to be $4,901.00 per acre as recited in the recorded act of sale for the adjacent piece of property, and in appraising the land and finding it in demand as a site for multiple family dwellings. Defendants Drago, et al., answered the appeal asking that the fair market value of the land be maintained as found by the trial court judge, on the basis of the tracts being presently in demand as a multiple family dwelling site.
In arriving at the highest and best use of the property being expropriated, and the fair market v^lue thereof, the lower court used as a comparable the most recent sale of a 13.97 acre adjacent tract sold by the same owners on October 9, 1969. This was the comparable used by three of the four appraisers as being entitled to greater weight and requiring less adjustment than the other tracts which they examined. This larger tract was sold for use as a multiple family dwelling project to provide low cost housing for racially mixed neighborhoods under a federal program known as H.U.D. financing. In that portion of the judgment which is not being appealed and is no longer at issue here, the lower court granted expropriation to the plaintiff of the said 5.53 acre tract, which, prior to the judgment of expropriation, was owned by these defendants, to be used by the residents of the multiple family project being constructed on the 13.97 acre tract, as a recreation area, with testimony having been adduced to the effect that a recreation and park area was badly needed for such a housing project. (See Tr. 57 — the testimony of Leroy J. Cobb that the highest and best use of the subject property was for the purpose of a park and recreation area).
The price recited in the deed of October 9, 1969 from Vincent Drago, et al. to Zion City Housing Company, Inc. covering the 13.97 acre tract was $4,901.00 per acre. The evidence reflected, however, that the witness, Hal McCullough, who negotiated the sale of the property charged a commission and a fee for his efforts in checking the sewer and utility connections, ingress, egress and in preparing the property for H.U.D. acceptance the sum of $1,000.00 per acre or the total sum of $13,000.00. The trial court held that the total price paid by Zion City, including the Me- *910 Cullough charges, when rounded off, was $6,000.00 per acre for the 13.97 acres, rather than the consideration recited in the deed of $4,901.00 per acre.
Plaintiff’s appraiser, Leroy J. Cobb, who figured the total value of the subject tract at $21,700.00 or $3930.00 per acre, did not know about the extra $13,000.00 paid to Mr. McCullough by Zion City for the comparable tract, and almost granted that had he known this fact, it would have been considered in his value estimate of the subject property, although there were other factors just as important in arriving at value, principally the essential inaccessibility of the subject tract and the zoning limitation (Tr. S3, 58).
One of the prime problems in establishing value on which the defendants focused considerable attention involved the extant zoning classification of A-2 assigned to subject property at the time of taking permitting single family units only, and the A-4 classification which would have allowed multi-family dwellings, the highest and best use to which the subject property could be put according to defendants’ appraisers. Before the sale of the comparable an application to rezone the whole tract was made to the Planning Commission of East Baton Rouge Parish, and approval of the change from A-2 to A-4 classification was secured, but in advance of presenting the application to the council for final approval and adoption, the 5.53 acre tract was deleted or withdrawn from the quest. The defendants contend the reason for withdrawal of the subject parcel was because they were unable to negotiate an acceptable price for this smaller tract. The two appraisers and several lay witnesses for the defendants, including one of the members of the Planning Commission, all testified in substance that a renewal of the application would almost certainly result in a change to the A-4 classification. The plaintiff witnesses, on the other hand, contended that the zoning ordinance permitted only single family units on property classified as A-2, and, to envision a change to an A-4 classification being accomplished would involve speculation and conjecture; in substance that the appraisers were faced with a zoning classification which did not permit multi-family dwellings, and, therefore, value should be fixed with due regard to the restrictions imposed by the zone classification.
Two witnesses stated they were ready to take an option on the subject property for $7,500.00 and $8,500.00 per acre conditioned upon the property being re-zoned from A-2 to A-4, and procurement of H. U.D. approval. Defendants claim that the filing of this suit stalled further negotiations along this line.
The cases are legion which hold that in the order to ascribe a certain purpose as constituting the highest and best use to which property being condemned may be put, it must be shown that such use is “reasonably prospective”; “reasonably possible”; “reasonably probable”; or “reasonably certain”. This potential use must be reasonably prospective and removed from the realm of guesswork, speculation and conjecture. See State Through the Department of Highways v. Brooks, La.App., 152 So.2d 637 (1963) and Central La. Elec. Co. v. Harang, La.App., 131 So.2d 398 (1961), and many other kindred cases.
The aforementioned quoted descriptive adjectives seem to be used interchangeably. The trial judge appears to have given considerable weight in determining the influence of the zoning classification to the ruling in the case of City of Monroe v. Nastasi, 175 So.2d 681 (La.App.2d Cir., 1965) which holds that, while serious consideration must be given to the effect of existing zoning regulations, precluding multiple residence use, before a basis of valuation for commercial use is accepted, where there is no indication of a bar to the necessary change of such classification and in view of the fact the change for the adjoining property had been accomplished without difficulty, the restrictions with respect to the zoning classification would have to *911 yield to the higher value attributable to commercial use especially where the evidence preponderated to the effect that the changes needed to be made were “reasonably possible”. The case of City of Monroe v. Carso, 179 So.2d 696 (La.App.2d Cir. 1965) follows the precept and rationale expressed in the Nastasi case.
Under the facts and circumstances presented here the trial judge was correct in ruling the highest and best use for the subject property was for the purpose of being utilized for the construction of mul-ti-family units, and that such use was not remote, speculative or conjectural, but rather could be accomplished within the reasonably foreseeable future.
We come next to the problem of accessibility. The subject property at time of expropriation had no existing and abutting roadways, no workable means of ingress or egress. The property lay between Ford Street on the north, Cadillac Street on its south side, a rather deep and wide canal on its east boundary and elementary school grounds on its west side. The named streets were not developed, and did not have any advantage for entrance to or exit from this property. True, a thirty-five foot right of way was reserved for the extension of Ford Street so that this roadway could, in the event of improvement or development, at least partially alleviate this relatively inaccessible condition. Plaintiff’s appraiser Cobb, in arriving at his estimate of value, considered this lack of accessibility and the zoning limitations to re-due the subject property -20% in value as compared with the value of the 13.97 acre tract, accepted as the prime comparable.
The lower court has fixed the value of the condemned tract at the price of $6,752.-00 per acre or a total sum of $37,350.00, pointing to the testimony of Mr. Welch and Mr. Pierson, indicating willingness to offer $8,000.00 and $7,500.00 per acre respectively provided the zone classification was changed from A-2 to A-4. Defendants cite Recreation & Park Commission v. German, 202 So.2d 469 (La.App. 1st Cir. 1967) as authority for including realtor’s commission as a portion of the consideration, and, though it cannot be determined from the record exactly what portion of Mr. McCullough’s charge of $13,000.00 represented commission and what part represented his developmental efforts, the trial court was correct in determining that through the recitation in the deed that the consideration paid was $4,901.00 per acre, the true consideration was $5,901.00 per acre for the comparable.
The prime comparable possesses considerably better access than does the subject, and the court holds that this relative lack of access to the subject property reduces its value 10% as compared with the 13.97 acre tract.
The evidence establishes preponderantly that the property taken here is worth the same amount as the acreage value of the prime comparable, less the 10% factor reduction for lack of proper accessibility. The per acreage value of the condemned tract is $5,310.90, rounded to the figure of $5,311.00 per acre.
The lower court judgment will be amended to reduce the award to the defendants as just compensation for the expropriation of defendants’ land in the amount of seven thousand, nine hundred ninety and 17/100 ($7,990.17) dollars, or from the sum of thirty-seven thousand three hundred fifty, and no/100 ($37,350.-00) dollars to the sum of twenty-nine thousand, three hundred sixty-nine and 83/100 ($29,369.83) dollars.
There will be judgment in favor of the plaintiff and against the defendants in the amount of this reduction or the sum of seven thousand, nine hundred ninety and 17/100 ($7,990.17) dollars with legal interest from May 26, 1970. The defendants are cast jointly and severally but not in so-lido.
Otherwise, the judgment of the trial court is affirmed.
*912 The costs of this appeal shall be borne by the appellees. The plaintiff is cast with all other costs.
Amended and affirmed.