BARNETTE, Judge.
This is an expropriation proceeding brought by the State of Louisiana, through the Department of Highways for the acquisition of 32.710 acres of unimproved land situated in West Baton Rouge Parish for right of way for Interstate Highway 10.The parcel of land required is part of a large tract owned by Evelyn Smith James, widow of Joseph James, and Louis Joseph James. It is situated approximately four or five miles west of the Interstate-10 Mississippi River bridge.
The right-of-way severs the James property leaving a portion south of the highway. The northern portion has access from a road referred to as Silvery Lane. This access was unchanged by the highway construction. The south portion which was not accessible before the taking is now served by a service road which is a part of the highway project. There is therefore no issue of severance damage and the only issue is the amount of just compensation for the 32.710 acres taken.
There is some conflict and confusion of testimony as to the total acreage in the James property. It is referred to as a 281.84 acre tract and there is reference to a certain 80 acre northern portion projecting from the main tract. The trial court judge in his “opinion” described it as follows :
“I might mention at this point that the expropriated property is located at the dead end, the western dead end of a lane or road called Silvery Lane; and while we are discussing the site, we might say that the property as shown on P-9 and other exhibits which are not necessary to elaborate upon at this point, is shaped on the northern portion thereof as a finger or a peninsula if water were involved. There’s no water, but there’s a finger of land which is comprised of eighty acres and then the land branches out below the eighty-acre tract to the east and to the west into a tract forming the main portion of the three hundred and twenty acre tract which are two hundred and forty acres. The taking for I — 10 comes into the bottom two hundred and forty *890 acres below the eighty-acre site, and cuts across from east to west and does not touch the eighty-acre site at all. I mention ihis because the testimony and photographs introduced in this case show that the land expropriated falls into a heavily wooded area; whereas, the finger of land, the eighty-acre tract, is partially cleared and partially wooded.”
The Department deposited in the registry of the Court at the time of the taking, July 23, 1969, the sum of $9,885, being the appraised value of the portion taken, as compensation to the landowners.
The defendants answered, denying the adequacy of the compensation deposited and alleged that the fair market value was much in excess thereof. They prayed for judgment in the amount of $49,065.00 as compensation for the 32.710 acres taken and $72,000 in severance damages. Their demand for severance damage was later withdrawn with a stipulation that there was no severance damage to the remainder of their property.
There was judgment in favor of the defendant landowners for the exact amount prayed for, namely $49,065 ($1500 per acre) plus $100 for a fence, as just compensation. Expert witness fees totaling $2125 for defendants’ two expert witnesses were fixed by the court and taxed as cost. The Department of Highways has appealed.
The contract for the substructure of the Interstate-10 Mississippi River bridge was let on April 30, 1963 and for the superstructure on April 19, 1965. The bridge was completed and opened for traffic, September 23, 1968 and had been in use approximately 10 months when the subject property was taken. The question of enhancement of value of the property as a result of the construction of the Mississippi River bridge and what, if any, consideration should be given to that factor in the appraisal of the subject property and adjustments in the comparables used will be discussed more fully below.
A description of the general area and the subject property was given by the Department’s expert witness, George Platt, with his opinion of its highest and best use, as follows:
“A before and after appraisal was made. I have photographs here in color of the subject property. The neighborhood is approximately four miles west of Port Allen. It’s bounded on the north by Louisiana Highway 190 and on the east by Louisiana Highway 415. The land is principally used for farming, sugar cane and cattle. There are scattered homes which range from modest frame homes to new brick veneer homes. There are a few small mobile home parks in the general area and on Silvery Lane there are two mobile homes right there before you get to the property. The land is undeveloped. A drainage canal cuts through the tract north of I-10. A Gulf States Utilities servitude extends across the north remainder in an east-west direction and is a hundred feet wide.
“Topography and drainage can be described by saying the land is flat and slopes gradually to the south. The elevation on the north side is approximately eighteen feet and its slopes to fourteen feet on the south side of the property. Land within the taking was approximately fourteen to fifteen feet in elevation. Utilities in the immediate neighborhood which are available to adjoining property owners were electricity and natural gas.
“Before the taking, the subject property had no road frontage at all with the only access being to the tract by way of Silvery Lane, a gravel street which dead-ended at the east property line of the north remainder of the subject and also a north-south asphalt road which *891 also dead-ended at the north remainder of the subject.
“The north remainder is approximately half open and half in thick woods. The open land is in high weeds and underbrush. The part taken and the south remainder is and was in woods. Railroad trackage is not present.
“* * * The land appears to be low in elevation, approximately fourteen to eighteen feet, most of the land being poorly drained forested soil. The land appears to be alluvium from the Mississippi River. The soil has some clay in it, the subject type of low back swamp or low woodland chiefly used for hardwoods and grazing. That’s the type of property it is.
“As I consider the subject site for its highest and best use estimate, I notice that the functional adequacy of this site as a farm appears to be affected by the following: the limited, amount of open land, possibly thirty acres of open land with the balance in low woodland which would make it maybe fifteen percent open and eighty-five percent in woods. The site has no road frontage at all before the taking. Drainage appears to be poor. The elevation is low, fourteen to eighteen feet. The hundred-foot Gulf States Utilities right-of-way is considered to be a nuisance to some extent, in my opinion. There are no improvements on the land other than barbed wire fencing. In my opinion, the highest and best use is agriculture land with grazing on the north and hardwood timber on the balance.”
The Department of Highways relied on two expert appraisers, namely, Chester A. Driggers and George Platt. The defendant landowners relied on one expert appraiser, namely, Thomas B. Dupree. Six other persons, experts in professional areas other than real estate appraisal, testified on the soil composition and its potential for use in cement manufacture, brick making, and as a source material for lightweight concrete aggregate. Two of these witnesses were industrial plant managers and executives and the other four were soil analysis experts and geological consultants and engineers.
The Department rested its case upon the testimony of its experts, Driggers and Platt which we still discuss in some detail below. The defendants then called as their first witness, Mr. Dupree, whose qualifications as a real estate appraiser were not disputed. Mr. Dupree from the outset sought to establish the theory of highest and best use of the subject property to be for “clay mining.” After testifying at length and in great detail in support of this theory and his income approach based thereon, he concluded by fixing the value of the subject property at $1650 per acre which he rounded off to $1500, the amount which defendants prayed for in their answer.
The trial of the case was continued to be resumed on the second following day. When Mr. Dupree was then called back to continue his testimony he had what he termed a “supplementary appraisal” based on the market data approach by using the comparable sales method of determining market value. He concluded that the highest and best use of the property in question was for residential subdivision development and on this basis fixed its value at $1500 per acre. Counsel for the Highway Department strenuously objected to this witness’ adoption of two highest and best use theories. Further objection was made to defendants’ switch to the market data approach by the use of comparable sales, based on defendants’ answer to interrogatories that it had not considered the use of comparable sales to any great extent and made no disclosure of them at the pretrial conference, thus leading plaintiff to believe they would rely on their clay mining theory. Over this objection Dupree’s testimony on the residential subdivision development theory was admitted and was ultimately ac *892 cepted by the trial judge and made the sole basis of his judgment.
The trial judge totally rejected the clay mining theory as the best and highest use of the subject property. His judgment in this respect is correct. It is supported by clear and convincing testimony that the clay is not suitable for lightweight aggregate ; was not needed for cement manufacture and there was no market for it for that purpose. The companies using such material had ample reserves for many years into the future. Furthermore, clay of that character is distributed throughout a wide area and possesses no unique commercial value. For contrast see: Lafayette Airport Commission v. Roy, 265 So.2d 459 at page 492 (La.App. 3d Cir. 1972), writs refused, 263 La. 1159, 266 So.2d 444 and 262 La. 1160, 266 So.2d 444 (1972).
The plaintiff’s witness, Driggers, found the highest and best use for the part taken to be agricultural. He did however find the front portion, being approximately 80 acres, which had access to Silvery Lane to have a “potential” value “for subdivision use.” This potential he discounted as speculative and competitive with more suitable land available nearer to developed areas. He made a clear distinction in character between the front and rear portions of the property based on accessibility, clearing, type of soil, drainage and elevation and did not find the rear portion, including the part taken, to have the speculative subdivision potential which he attributed to the northern 80 acres. In this respect his opinion differs from that of Mr. Dupree who found the entire tract to have “potential subdivision development” value. The other expert, Platt, for reasons quoted above found the highest and best use to be agricultural with grazing on the north and hardwood timber on the rear portion.
All three experts used comparables with adjustments to arrive at a (per acre) unit value as of the date of the taking. The property in question, especially the portion taken was isolated, inaccessible and unimproved and no truly comparable sales were found. Most of the comparables used were either some distance from the subject property, or very small parcels such as two homesites on Silvery Lane or large improved estates with special advantages such as plantation improvements, cultivation and major road and railway access, thus requiring much adjustment for comparable use.
Plaintiff’s expert appraiser, Driggers, used five comparables from which, after making many adjustments arrived at the figure of $300 per acre for the 32.710 acres expropriated. We are impressed with the personal physical inspection and extensive and detailed study which he put into his appraisal. In our opinion he demonstrated an impressive expertise in regard to the subject. Among the comparables used by him were two sales of homesites on Silvery Lane near the northern 80 acres of the James property. The sales were in November, 1966, two acres each, to a father and son-in-law for homesites. The unit price (per acre) was $1425. This Mr. Driggers adjusted to $1000 per acre for comparable use, since they were small tracts.
The defendants’ appraiser, Dupree, also used these two sales as comparables and adjusted them upward to $1567 per acre. He acknowledged on cross examination that the northern 80 acres of the James property (that nearest these two compara-bles) was more valuable than the southern portion (from which the land in question was expropriated) but nevertheless he gave a $1500 per acre appraisal to the whole of the James property.
In addition to these two comparables, Dupree used eight others, one of which was rejected because it was subsequent to the date of expropriation of the subject property. All of the other comparables used by him required major adjustments because of special advantages of location, *893 size, accessibility, industrial and plantation development and highway frontage.
Plaintiff’s expert, Platt, used four comparable sales and after making adjustments arrived at an appraisal of $350 per acre for the subject property. His comparables, like those of the other two experts, were not truly comparable but referred to by Mr. Platt as “satisfactory index sales.” Each of the properties used as comparables by this witness had special advantages, such as open land, sugar cane cultivation, major highway or railroad frontage or both, and advantageous location and re-qired much adjustment for use as compa-rables.
The trial court judge evidently had difficulty as we do in relating the compa-rables used by all the experts to the subject property because of the major adjustments which their special features required and their great dissimilarity to the subject property. Perhaps for this reason he gave prime consideration to the two comparables used by both Mr. Driggers and Mr. Du-pree, namely, the two 2 acre homesite sales on Silvery Lane. We think both the appraiser, Dupree, and the trial judge were in obvious error in relying on these two sales to give equal value to the south portion of the James property as they did to the north 80 acres with which these two sales might more nearly approach comparability. The opinion of Mr. Driggers on this difference in value is much more logical and reasonable. We find no evidence or reason to give the same acreage value to the portion of the James property expropriated as that on the north which has access from Silvery Lane.
Furthermore, we think less weight should be given to the opinion of Mr. Du-pree who hastily assembled ten comparable sales for his “supplementary appraisal” in the one day recess of the trial. He did not and could not give the extensive study to the comparables used as was given by the other two experts. He was a resident of Shreveport and had never before appraised property in West Baton Rouge Parish, whereas, the other two experts had had extensive experience in the appraisal of property in that area. Furthermore he came to court prepared in detail to defend his “clay mining” and income approach theory and changed to the market data approach during the course of the trial.
The opinions of all experts in expropriation proceedings, having equal qualifications and having reached conclusions based on equally relevant evidence and founded on well supported logical reasoning, should be given equal consideration by the courts. Lafayette Airport Commission v. Roy, supra; Parish of East Baton Rouge v. S & H Heating Company, Inc., 216 So.2d 360 (La.App. 1st Cir. 1968).
Among the factors which the court should consider in determining the relative weight to be given the opinions of experts, especially when they are at such wide divergence as here, are their familiarity with the property expropriated and the area in which it is located; the thoroughness of their study; and the soundness of the reasons given in support of their estimates. Lafayette Airport Commission v. Roy, supra, 265 So.2d at page 472, and citations there given; State Through Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1st Cir. 1970); State Through Department of Highways v. Singletary, 185 So.2d 642 (La.App. 1st Cir. 1966); State Through Department of Highways v. Adams, 184 So.2d 744 (La.App. 2d Cir. 1966).
 Applying this test to the testimony of the three expert appraisers in this case, it was manifest error for the trial court to disregard the opinions of experts Driggers and Platt and to rely solely upon the opinion of the expert Dupree. Of the three experts who testified, he was least familiar with the subject property and the entire area. He devoted the least time (one day) to the study of the comparables and he had not personally inspected any of the property except the portion expropriat *894 ed and thus did not possess the personal knowledge which the other appraisers had upon which to base a reasonable and logical comparison of values.
This consideration is all the more important in situations, as here, where there are no true comparable sales to be found in the area of the subject property. In such situations the court may rely on the testimony of experts who have dealt extensively with sales and purchases of lands in the area. Their opinions may be relied on to establish value. State, Department of Highways v. Gielen, 184 So.2d 737 (La.App. 3d Cir. 1966).
An additional reason not to follow the opinion of Mr. Dupree, which the trial court did in manifest error, is that his “supplemental appraisal” based on his theory of highest and best use being potential residential subdivision development is entirely without support. Mr. Dupree admitted that none of the comparables used by him were subdivision properties. He did not know of any plans the defendants had for future subdivision development. He was unfamiliar with local ordinances regarding subdivisions. He did not know the distance to the nearest subdivision. He did not know when the last subdivision was opened in West Baton Rouge Parish, nor how many there are in the area. He did not know the demand for subdivisions in the area, but thought the demand for acreage for “future use of subdivision apparently is very good in West Baton Rouge Parish,” but could not name anyone contemplating such an investment. He speculated that such a development of the subject oroperty might be expected in ten years. The subject property is not near any other subdivision and until the highway was constructed the entire southern portion of the James property was without means of access.
In Recreation and Park Commission v. Drago, 247 So.2d 908 (La.App. 1st Cir. 1971), writ refused, 259 La. 749, 252 So.2d 452 (1971), this Court said:
“The cases are legion which hold that in the order to ascribe a certain purpose as constituting the highest and best use to which property being condemned may be put, it must be shown that such use is ‘reasonably prospective’; ‘reasonably possible’; ‘reasonably probable’; or ‘reasonably certain.’ This potential use must be reasonably prospective and removed from the realm of guesswork, speculation and conjecture. See State Through the Department of Highways v. Brooks, La.App., 152 So.2d 637 (1963) and Central La. Elec. Co. v. Harang, La.App., 131 So.2d 398 (1961), and many other kindred cases.”
See also State, Department of Highways v. Talbot, 200 So.2d 97 (La.App. 1st Cir. 1967), writ refused, 251 La. 49, 202 So.2d 658 (1967). In that case this court cited with approval and quoted from Central Louisiana Electric Co. v. Harang, 131 So.2d 398 (La.App. 1st Cir. 1961) as follows:
“It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value. (Emphasis added)
*895 “Thus has been held in Plaquemines Parish School Board v. Miller, supra [222 La. 584, 63 So.2d 6], that while the fact that a piece of property may at some time become valuable for residential subdivision purposes may be taken into consideration in determining its market value in expropriation proceedings, to classify its best and highest use as subdivision purposes, it should be made to appear that there is logical expectation it mqy be so developed in the reasonably near future. It was therein further held that the mere possibility of future subdivision use is too speculative.” 131 So.2d at p.401.
The use of the subject property for subdivision development is exceedingly remote, highly improbable and not reasonably prospective. It is at best in the realm of sheer speculation. We will therefore reject Mr. Dupree’s appraisal based on this unfounded theory of highest and best use.
All of the comparable sales used by the three experts were dated after the Interstate Highway 10 Bridge was either under construction or completed. All the witnesses agree that the bridge had a marked influence on all the property in the area, even that some distance from the highway. Whatever influence it had was reflected in the sales used as comparables. To what extent defendants’ witness Mr. Dupree might have considered this influence on the subject property is not of material significance since we have rejected his opinion for other reasons. It is not necessary therefore to discuss this issue about which there was much argment in the Court below and in briefs filed in this Court.
The defendants have failed to discharge the burden of proof which the law imposes upon the landowner to establish the value of the property taken by convincing proof. “Such proof must be positive and certain and cannot rest upon mere speculation.” State, Department of Highways v. Shelton, 192 So.2d 161 (La.App. 2d Cir. 1966), writ refused, 250 La. 16, 193 So.2d 528 (1967); State, Department of Highways v. Bassemier, 203 So.2d 881 (La.App. 1st Cir. 1967) and numerous cases these cited; State, Department of Highways v. Jacques, 197 So.2d 414 (La.App. 4th Cir. 1967); LSA-R.S. 48:453. This statute before amendment by Act 30, Ex. Sess. of 1974 provided:
“In either case [value or damage] the defendant has the burden of proving his claim.”
The 1974 amendment deleted this provision, but the act provided that the provisions of the act “shall not affect any action, suit, or proceeding” filed prior to January 1, 1975. Therefore the provision of the act above quoted applies to this suit.
The defendants have failed to discharge that burden of proof and we must therefore determine the just compensation from the testimony of plaintiff’s experts.
Mr. Driggers found the highest and best use of the part taken to be agricultural, but made a distinction in value between the north and south portions. The front or north portion he found to have a “speculative” potential for subdivision uses but not so for the part taken which he termed agricultural. Mr. Platt found the highest and best use for the whole property to be agriculture and grazing and for the part taken, timber growing.
There is practically no difference in their opinions of highest and best use and their appraisals vary only to the extent of $50 per acre. We will therefore accept the higher of the two, namely that of Mr. Platt and render judgment accordingly. Mr. Platt also made an allowance of $100 for the fence taken. This will be included in the judgment.
For these reasons the judgment appealed is amended by reducing the award of compensation for the land and fence taken *896 from $49,165.00 to $11,549.00 with credit given for $9,885.00 deposited in the registry of the Court. In all other respects the judgment is affirmed.

Amended and Affirmed.