LOTTINGER, Judge.
This is an expropriation suit filed by the Parish of East Baton Rouge for the purpose of acquiring a right-of-way needed for a drainage project. The defendants own a large and regularly shaped tract of land situated north of the city of Baton Rouge comprising over 1400 acres. Mick-ens Road runs through the property from east to west, dividing it into two tracts of 890 acres and 534 acres, each, the larger tract being north of the road. The northern portion of the north tract was also traversed by Cypress Bayou which meandered in an easterly direction into the Comite River. The required right-of-way comprises an area of 55.59 acres, of which 30.91 acres is needed in full ownership for the location of the canal and 24.68 acres is needed as a servitude for the deposit of spoils. The latter is located by agreement with defendants, along the northern side of defendants’ property in order to hold damages to a minimum.
The part taken forms a portion of the 890-acre tract owned by defendants. In effect, the new drainage canal straightens Cypress Bayou as it crossed this portion of defendants’ property. Adjacent to Cypress Bayou there are approximately 160 acres of low land owned by defendants which were subject to inundation. As a result of the taking, there is a small tract comprising 9.03 acres in the extreme northwest corner which was cut off from the larger tract.
In accordance with a stipulation of the parties which was reached prior to trial on the merits below, petitioner was given the right to proceed with any and all work in connection with the project; all said work was completed; the spoil was not to be spread by the Parish; the defendants would not claim damages to the area south of the right-of-way; the date of the taking was February 29, 1969; interest at 5% per annum on any award would be allowed from that date; and, the area taken for the servitude of spoil was to be treated, for *667 the purpose of fixing value, as though taken in full ownership. The only issues remaining for decision by the Court was with regard to the value of the 55.59 acres taken and severance damages, if any, to the 9.03 acres remaining in the northwest corner of the defendants’ lands. The right of taking was not at issue.
Following the trial on the merits below, the Lower Court fixed the valuation on the 55.59 acres taken at the sum of $500.-00 per acre, and accordingly awarded judgment for said taking in the sum of $27,795-00. With regard to severance damages for the 9.03 acres which was separated from the larger tract by virtue of the drainage channel, the Lower Court awarded damages at $450.00 per acre, or a total sum of $4,063.50. As per stipulation, the interest on both awards was at the rate of 5% and to run from February 29, 1968 until paid. From this judgment the defendants took a devolutive appeal.
In its reasons for judgment, the Lower Court reviewed the evidence and decided as follows:
“Although the property is presently being used for pasture, all of the evidence is to the effect that it has potential value for subdivision purposes. In other words, in the future and over an extended period of time, the highest and best use of the land will be for residential subdivisions. It is evident that the market will not support the immediate development of such a vast area. Due to its location and other factors, the property has a value, in excess of pure agricultural land. In fact, in August of 1966 and in December of 1967, the defendants sold off 40 acres and 83.94 acres out of the extreme southwestern portion of the total parent tract. These two areas were south of Mickens Road and adjacent to existing developments, schools and sewer facilities. It is to be noted that the area involved in the present case, i. e., the 55 acres taken, is a part of the rear or northern approximately 160 acres of the tract around Cypress Bayou all of which is low land, subject to inundation.
“All of the appraisers testifying in this case arrived at their estimates of value by comparing sales of other properties in the general area. However, every sale had to be adjusted because of various factors— the most obvious, of course, being the size of the subject property. None of the com-parables used were even half as large. The prices ranged from $4,500.00 per acre for the 40 acres in the southwest corner fronting on Greenwell Street zoned A-2, to $1,160.00 per acre for 232 acres purchased by the Recreation and Park Commission, to $275.00 an acre for 100 acres of all low land. Suffice it to say, the adjustments were considerable.
“Both of the appraisers who testified on behalf of the defendants estimated the value of the part expropriated on a pro-rata average-acre value as a proportionate portion of the entire 890 acre tract located north of Mickens Road. The appraisers for the taking authority placed a lower value on the area subject to inundation, considering the value of that portion as it contributed to the value of the whole property. Without reciting the details of each one’s testimony, it may be noted that Mr. Farrier estimated $2,000.00 an acre for the whole property and $500.00 per acre for the part taken. Mr. Snyder put a value of $2,000.00 an acre on the land south of Mickens Road, $1,125.00 an acre on the land north of Mickens Road which was above 50 feet in elevation and $500.00 an acre for that portion north of Mickens Road and below 50 feet in elevation. Mr. Munson envisioned the construction of a golf course on a part of the development of the area north of Mickens Road. He estimated the value of each acre of the entire 890 acre tract at $1,300.00, whether subject to inundation or not. Mr. Doiron placed a value of $2,000.00 per acre for each acre of the 890 acre tract, agreeing with Mr. Munson that each acre had to be considered a part of an economic unit; integral, essential, vital thereto, and of equal value.
*668 “After considering- the evidence and the authorities cited, we conclude that the law and the facts compel an evaluation of the property taken not on an average per acre value but on the basis of what it contributed to the value of the entire tract. In Texas Gas Transmission Corp. vs. C. M. Thibodeaux Co., 148 So.2d 337, the Court of Appeal, First Circuit, determined that swamp land in the rear did not possess the same value as high land abutting the bayou and said:
“ 'Although both Green et al v„ Board of Commissioners of Lake Borgne Basin Levee District, 163 La. 117,. Ill So. 619, and Colonial Land Company v. Board of Commissioners of Pontchartrain Levee District, 170 La. 1057, 129 So. 635, concerned payment of assessed valuation for lands appropriated for levee purposes under the police power of the state as distinguished from the market value which must be paid in the instant expropriation proceeding, nevertheless, we believe the principles therein enunciated by the Supreme Court applicable to the case at bar.
“ ‘In the cited authorities the Supreme Court recognized that in a given tract of land there may be found lands possessing different characteristics and classifications so that each and every acre therein does not necessarily possess the same value. The Supreme Court expressly declared that in such circumstances the value of each acre is not the average value of the entire tract as a whole. The rationale of the rule is that under such circumstances the value of the particular class of lands affected must be determined in the light of their relative worth, as compared to the remainder of the tract, proper allowance being made for the difference in values between the various classes of lands in the tract.’”
“This approach has been followed in several cases. See Columbia Gulf Transmission Co. v; Fontenot, 187 So.2d 455; State v. Moyse, La.App., 151 So.2d 149; State, Department of Highways v. Landry, La. App., 171 So.2d 779; State, Department of Highways v. Waterbury, La.App., 171 So. 2d 790; and, State, Department of Highways v. LeDoux, La.App., 184 So.2d 604. The same rule should be applied across the board, that is, the landowner should not receive just the average when the most valuable portion is taken and the expropriating authority should not pay the average when the least valuable portion is involved.
“The Court does not believe that each acre in this large tract is as valuable as every other acre. Especially is this true when its highest and best use is for potential residential subdivisions and portions of it are subject to inundation. With a tract of this size, different areas are affected by relative proximity to sewer facilities, schools and other developments. This is apparent from the sales already made from the original tract. The thrust of the defendants’ case is that the area taken was an integral part of the whole tract and was essential to the development of the entire remaining portion from the standpoint of drainage. However, it is apparent from the maps in evidence, particularly the one marked “D-20” for identification (filed in the record with plaintiff’s amending petition), that excluding the area taken the tract still had access to the old channel of Cypress Bayou across practically the entire northern portion. It is not borne out, as contended by the defendants, that 80%.of the old channel of Cypress Bayou lies within the 55.59 acres taken. Assuming that the defendants never owned the 55.59 acres, they would not have to acquire or buy any part of it to get their upland drainage to the channel. We must respectfully reject the contention that the 55.59 acres was “vital”, “necessary”, “indispensable” or “essential” to the drainage of the balance of the 890 acre tract thereby constituting an “economic unit” for purposes of appraisal. Sound reasoning, logic and the evidence, taken as a whole, dictates otherwise. We likewise *669 reject the proposed use of the part taken for a future golf course as being entirely speculative when related to the long range residential development of such a large tract of land.
“Based on the evidence presented, it is the Court’s opinion that on February 29, 1968, the stipulated date of taking, the high land north of Mickens Road had a value of $1,-500.00 per acre and the land subject to inundation had a value of $500.00 per acre. Inasmuch as the area expropriated was all low land, defendants are entitled to the sum of $27,795.00 for the 55.59 acres involved. This is the amount which has already been offered by the plaintiff.
“Turning now to the severance damages sustained by the 9.03 acres lying in the northwest corner of the 890 acre tract, we find that this land will now be separated from the other property of the defendants by a very large canal. In effect, the defendants no longer have access to this land. The construction of a bridge to span the canal is not economically feasible. It is true that the land was already separated from the remainder of the tract by Cypress Bayou but the bayou did not present the formidable obstacle which the canal does. We have carefully reviewed the testimony of the four appraisers found on pages 40, 41, 96, 131, 132, 133, 134, 190, 191, 192, 218, 251, 260 and 271 of the transcript and we have concluded that this land was reduced in value as a result of the taking from $500.00 per acre to $50.00 per acre. We find the 40% and 50% estimates of damage by Messrs. Farrier and Snyder are contrary to the evidence and we find the total loss estimate of Messrs. Munson and Doiron unrealistic. It is true that the land is of no use whatever to the defendants and that there is virtually no market for the land. The defendants must look to the one potential buyer who owns land adjacent to it and if he does not want it or is financially unable to buy it, they are without any market whatsoever. It is only because we believe that all land has some value that we conclude it was damaged to the extent of $450.00 per acre and not to the full extent of its previous value. It may be noted that while this portion of the tract was not as low as the part taken and probably not subject to inundation, because of its location and size it was properly related in value to all that part generally comprising the approximately 160 acres of low land, that is, a value of $500.00 per acre.
“Severance damages for the 9.03 acres is properly computed at $450.00 per acre for a total sum of $4,063.50. The plaintiff has offered only the sum of $2,257,50. In view of this, the plaintiff will be cast for all costs of Court for which it is legally liable. Expert witness fees in the amount of $1,250.00 each will be set for William Warren Munson and J. Russell Doiron same to be taxed as a part of the costs of Court.”
Mr. William Munson, who testified as one of the expert appraisers on behalf of the defendants, had neither built any golf courses nor had he handled any land sales for such purposes. He did testify, however, that he was at the time of the trial trying to purchase approximately 200 acres for a golf course, but this was at another location.
Mr. J. Russell Doiron, the other appraiser for defendants, testified that he had been managing the entire property for the defendants for several years. He testified that to the date of the trial no golf course expert nor engineer had been out there to lay off a golf course or to see whether one could be laid off in the vicinity of the property expropriated. Although he did testify that a golf course would be a material aid to the development and the sale of the remaining property, he stated that the land-study had been in the conversation stage for some three years, however, no conclusions had been reached as of the time of trial. The evidence discloses that there has been no development of any part of the 890-acre tract as an economic unit.
*670 We agree with the Lower Court that the development of a gulf course on a portion of the tract sought to be expropriated was simply a product of the imagination of the appraisers of the defendant, one of whom was the manager of the entire property. The market value cannot be based on mere speculation; it is incumbent upon the landowner to show that there is a reasonable expectation that the property may be so used or developed in the not too distant future. This principle has been followed on many occasions by the appellate courts in Louisiana and we quote from our decision Central Louisiana Electric Company v. Mire, La.App., 140 So.2d 467, as follows:
“The law applicable to this case was completely summarized by this court in the case of Central Louisiana Electric Co. v. Harang, La.App., 131 So.2d 398, and we quote from that opinion starting at page 401 wherein we stated:
“ ‘It is the settled jurisprudence of this state that the valuation to be placed on expropriated land is its market value at the time of taking and that market value is the fair value as between a willing purchaser and a willing seller under ordinary and usual circmumstances. Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260.
“ ‘Market value .of property expropriated for public use must be determined in the light of the best and highest use to which the property may reasonably be put but to constitute best and highest use for residential subdivision purposes in determining market value, it must be made to appear that there is reasonable expectation the property may be so used or developed in the not too distant future. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.’ ”
With regard to the contention on the part of the defendants that the value to be placed on the property expropriated should be the same as the average acreage value in the entire tract, i. e., one acre is just as valuable as any other acre whether it is part of a swamp or is high ground above flood level, we quote from Green v. Board of Commissioners of Lake Borgne Basin Levee Dist, 163 La. 117, 111 So. 619, where the Supreme Court, in overruling an average value per acre method of evaluation, said:
“But in our opinion it is not a mere matter of arithmetic. It is quite true that the total value of the whole land must be taken to be its assessed value; but it does not follow that each acre of land in a single tract must be taken to have exactly the same value as every other acre therein; that acres of arable land and acres of marsh land, acres of wooded land, and acres of bare land, all have the same value; that orchards and vineyards are not to be distinguished from stonelands and pastures merely because they are all included in the one tract.
“On the contrary, we think that the relative worth of the lands taken, as compared to that of the rest of the tract, should be considered, and proper allowance made for the difference in values.”
This basic principle as laid down by our Supreme Court has been followed to the present time as is shown by the decisions cited in opinion of the Lower Court.
Accordingly, we find no error in the decision of the Lower Court, and for the reasons hereinabove assigned, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by defendants.
Judgment affirmed.