LOTTINGER, Judge.
This is a suit for expropriation by the Parish of East Baton Rouge of certain land belonging to defendant, Elwood R. Nilson to obtain a right of way required to build an adequate drain structure in ancl along the existing channel of the Lobdell Lateral North Branch of Ward Creek. The creek was originally a major natural drain for a large area of East Baton Rouge Parish which finally emptied into Bayou Manchac. During the year 1945, the Policy Jury of the parish made some improvements to the drainage structure with the permission of the defendant. The creek has been a major drainage channel for many years.
The improvements are to consist of a concrete lined canal, designed not only to expedite the flow of surface water, but also to eliminate constant erosion so detrimental to the abutting property such as that owned by defendant.
The Lower Court awarded judgment in favor of defendant and against petitioner in the sum of Three Thousand Seven Hundred Twenty-five and 80/100 ($3,725.80) Dollars, of which the sum of Two Thousand One Hundred and No/100 ($2,100.-00) Dollars was severance damages, One Thousand Five Hundred Fifty-four and 80/100 ($1,554.80) Dollars were damages for the taking, and the sum of Seventy-one and No/100 ($71.00) Dollars is the rental value for the adjoining property to be used during the construction period. The defendant has taken this appeal.
In this appeal we are only concerned with the award for severance damages as the other awards are agreeable to the defendant.
In its oral reasons for judgment below, the Lower Court adopted the estimate for severance damages as testified to by Mr. George Platt, one of petitioner’s experts. The Lower Court said:
“The Court does not agree with defendant’s witnesses, however, as to the sever- *623 anee damages to be allowed. The property was already divided by a drainage ditch approximately twenty (20) feet wide. For any major substantial use or to obtain maximum value for the property, the owner would have had to bridge the property. Mr. Platt’s method of figuring the severance damages appeals to the court, which, however, believes that the amount should be set at the total cost of the bridging rather than for bridging the added width in the canal. This is based upon the fact as pointed out that the unit cost will be greater because of the wider span, the higher requirements and the great possibility that a contractor will have to be employed rather than the use of casually employed labor. The extra trouble and time will in the opinion of the court approach the amount of any allowance to be made for the cost of a smaller and shorter bridge across the existing ditch. Therefore, the court will allow Two thousand one hundred and no/100 ($2,100.00) Dollars in severance damages.”
Mr. Willet, the other expert who testified on behalf of the petitioner testified that the cost of the bridge would be greater before the taking than it would be after the taking “. . . because he would have to build a bridge that would be suitable for the after status rather than just the initial cost of building a bridge on what one sees out there before this project is started.”
Mr. Kermit A. Williams, who testified on behalf of defendant testified that the front portion was valued at 45^ per square foot and the rear portion at 35‡ per square foot. After the taking the rear portion would be reduced to a value of per square foot. Following the taking there remained 33,533 square feet to the rear of the drainage canal. Thus there would be a differential of some ten thousand dollars in the rear portion after the taking. He further testified that if a bridge of sufficient substance and quality was constructed over the canal, “. . . the rear would then be as useable as the front and would have the same value as the front.” On being asked by the Court whether Mr. Williams had any figures on the cost of a bridge, he replied :
“No figures to actually testify to, your Honor. I did check out as well as I could. I also checked as to what the City Parish themselves indicated that they could build a bridge for after the canal is completed. Their estimate was approximately six thousand five hundred dollars. The estimates that I have gotten by discussing with engineers, was that for an individual to attempt to build one bridge as compared to a number of them, which the City Parish would build, the cost would be higher, even if they had to let out a single bridge on contract, their estimate was somewhere between ten and twelve thousand dollars.”
Mr. Norbert Schexnayder, also testifying on the part of defendant, stated that the damages to the rear portion of the property brought about by the building of the canal was Thirteen Thousand One Hundred Sixteen and 74/100 ($13,116.74) Dollars. This figure was based on the diminution in value of the rear portion subsequent to the taking for the additional space to widen and improve the creek.
Prior to the taking the servitude of drain on the property of petitioner was a shallow stream of approximately 20 feet in width. After the taking this same creek will become a 50 foot wide concrete canal 14 feet deep and 9 feet wide at the bottom. The property of petitioner fronts 150 feet on Lobdell Avenue by depth of 600 feet between equal and parallel lines. The creek bed crosses his lot diagonally at a distance of 373 feet from Lobdell Avenue on the north side of the lot and 303 feet on the south side of the lot. At one time there was a bridge crossing the creek, however, the testimony at the trial was that at the present time on petitioner’s property there *624 was only a board crossing which was sitting on a couple of pilings. Certainly the widening of the channel to SO feet and increasing the depth to 14 feet will cause substantially more damages to the property of petitioner than was present prior to the taking.
The award of the Lower Court for severance damages, based on the testimony of Mr. Platt in the sum of Two Thousand One Hundred and No/100 ($2,100.00) Dollars was for a pedestrian bridge having a width of 4 feet.
We do not feel this sum sufficient to recompense defendant for the diminution in value after the taking. The testimony showed that the petitioner’s property is situated in a very desirable single family residential neighborhood, and a substantial portion of his lot of ground which will be completely cut off as a result of the taking unless a sufficient bridge is constructed to connect same with the front portion.
Mr. Williams testified that there was a diminution in value of some $10,000.00 to the rear portion of petitioner’s property after the taking. Mr. Schexnayder set the diminution in value at $13,116.74.
Mr. Williams testified that to bridge the canal prior to the taking would have cost no more than $3,300.00, and that after the taking it would cost from $10,000.00 to $12,000.00 to adequately bridge the canal. Mr. Schexnayder estimated the cost of using culverts to bridge the canal before the taking to be only $2,000.00 while after the taking, he did not believe the canal could be made whole.
Of course, the problem here is to assess severance damages, that is, the diminution in the value of the property after the taking for the purpose of widening, deepening and improving the canal.
We are more impressed with the testimony of Mr. Williams to the effect that the diminution in value after the taking was in the sum of $10,000.00 and such amount should be awarded defendant as severance damages.
For the reasons hereinabove assigned the judgment of the Lower Court should be amended to increase the award for severance damages from $2,100.00 to $10,000.00, the sum of $7,900.00, and, accordingly, the judgment of the Lower Court will be increased from the sum of $3,725.80 to the sum of $11,625.80, and, as amended, said judgment will be affirmed. All costs of this appeal shall be paid by petitioner, as provided by law.
Judgment amended and affirmed.